# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REGINA K. PRATT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-15-109-RAW-SPS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Regina K. Pratt requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: whether the decision was supported by substantial evidence, and whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 23, 1968, and was forty-four years old at the time of the most recent administrative hearing (Tr. 53). She completed two years of college, and has no past relevant work (Tr. 124, 224). The claimant alleges she has been unable to work since June 1, 2006, due to arthritis, chronic pain in the neck and upper back, migraines, and bilateral carpal tunnel (Tr. 223).

## Procedural History

On January 27, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Lantz McClain held an administrative hearing and determined the claimant was not disabled in a written decision dated June 28, 2013 (Tr. 26-34). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours in an eight-hour workday (all

with normal breaks), except she should avoid working above shoulder level and no constant use of the hands for fingering and handling (only frequently) (Tr. 29). The ALJ concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *i. e.*, bakery worker and cashier (Tr. 34).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess her credibility, and (ii) failing to properly assess her RFC. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease and carpal tunnel syndrome (Tr. 28). The medical evidence reveals that the claimant was found to have degenerative disc disease of C5-C6 on February 16, 2010, following x-rays that revealed mild spondylitic degenerative disk disease involving C5-C6 in an otherwise unremarkable study (Tr. 292, 307). She was diagnosed with carpal tunnel syndrome on January 24, 2011, and prescribed wrist braces, medications, and exercises (Tr. 283). Notes from June 25, 2012 indicate a report to the claimant that x-rays were normal except for some inflammation in the sacroiliac joint, and the option of a steroid injection (Tr. 388). X-ray results indicate mild degenerative disc disease at C5-C6, spondylosis deformans at C5, and sacroiliitis due to sclerosis of the bilateral sacroiliac joints and symphyseal degeneration (Tr. 405-406, 431). On August 10, 2012, the claimant received a steroid injection in the left sacroiliac joint (Tr. 417). On December 26, 2012, the claimant refused physical therapy, and was assessed with right

shoulder pain, lumbago, arthralgia, and edema of the lower extremities (Tr. 444). A February 2, 2013 CT of the right shoulder revealed degenerative cystic changes present at the greater tuberosity (Tr. 450).

Dr. Ronald Schatzman examined the claimant on March 26, 2011, and assessed her with back pain by history, carpal tunnel by history, and tobacco abuse (Tr. 318). On March 25, 2013, Subramaniam Krishnamurthi, M.D. examined the claimant and noted she had normal grip strength, speed, and heel/toe walking, and that her cervical spine had slightly reduced range of motion due to neck pain but that the others were within normal limits (Tr. 455). Additionally, the claimant's left shoulder had a reduced range of motion due to pain (Tr. 455). He assessed her with rheumatoid arthritis (which is what she reported as a previous diagnosis), as well as a slightly reduced range of motion of the cervical spine due to neck pain, reduced range of motion on the left shoulder, and normal range of motion of the right upper extremity (Tr. 456). He also completed a physical Medical Source Statement (MSS) in which, *inter alia*, he indicated that the claimant had complaints of pain in both shoulders and her left shoulder had a reduced range of motion, and he limited her to six hours total for one hour at a time of sitting in an eight-hour workday, as well as three hours total each for standing and walking for one hour at a time in an eight-hour workday (Tr. 457-458). In addition to limitations related to her shoulders, he indicated that she could only use her feet frequently, but indicated she could frequently engage in most postural and environmental activities (Tr. 459-461). Upon review of the record, state agency physicians determined that the claimant did not have a severe physical impairment (Tr. 323, 363).

At the administrative hearing, the claimant testified that she had tried working at Subway for two days but could not because her hands ached too much (Tr. 53). She testified that the problems with her carpal tunnel included: sharp needle pains in her hands when she uses them for more than fifteen minutes and problems gripping and holding things every day, and that she has braces that she mostly wears at night but also occasionally during the day (Tr. 54-56). Additionally, she testified that hip pain causes her difficulty standing up about once a week, and that her neck pain causes problems and sharp pain as well (Tr. 56-58). She testified that her Tramadol makes her drowsy and sometimes nod off (Tr. 60). She also stated that she has problems in her shoulders and with migraines that occur three to four times a month (Tr. 60). As to her physical limitations, she testified that she could sit thirty minutes at a time, stand about the same, walk about a quarter of a mile, and lift and carry ten pounds, but that she did not think she could do these things all day (Tr. 61-62).

In his written opinion, the ALJ thoroughly summarized the claimant's own testimony as well as the medical evidence in the record. At step four, the ALJ found that the claimant's allegations were not supported to the extent alleged. He noted that despite her complaints of disabling impairments since 2006, there is no medical evidence prior to 2008, and that there were no objective findings to support her complaints to the extent alleged (Tr. 31). Further, he noted she first testified she did not drive at all, then testified that she drove about once a week; that although she testified that Tramadol made her drowsy, records reflect she denied medication side effects at least once and actually reported it relieved her pain (Tr. 32). Noting her reported activities that included making

jewelry and drawing two days a weeks, as well as dinner out once a week with girlfriends, the ALJ also noted that none of her treating physicians had placed restrictions on her activities that would be inconsistent with light work (Tr. 33). As to the carpal tunnel syndrome, he noted that after her diagnosis and prescription for wrist braces there was no further treatment or related complaints in the record (Tr. 31). The ALJ assigned both consultative examining opinions little weight, noting that the first one showed no abnormalities and that the second one diagnosed her with rheumatoid arthritis despite the fact she had not been tested for it and the claimant herself stated the CE exam lasted only fourteen minutes. He also gave the opinions of the state reviewing physicians little weight (Tr. 32).

The claimant first contends that the ALJ erred in analyzing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely

credible" (Tr. 46).  Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.  The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches.  Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimants' credibility.  Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, as listed above (Tr. 31-32).  The claimant complains that the ALJ did not point out the above-noted inconsistencies at the administrative hearing, and that he should have done so in order to allow the claimant to explain why she did not consistently pursue medical treatment, and that he should have asked the claimant whether she told her providers that Tramadol made her drowsy.  The undersigned Magistrate Judge finds, however, that the ALJ linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*.  There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment, specifically that there is no evidence that she could perform at the exertional level of light work, as opposed to either medium work or sedentary work. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating and reviewing physicians, during the insured period, indicating that: (i) other than diagnosis and prescription for wrist braces, there is hardly any mention of the claimant's carpal tunnel in the record; (ii) x-rays of the cervical spine had only mild degenerative changes; (iii) physical exam in 2012 showed mild tenderness to palpation of the sacroiliac joint and right back, but good overall strength; (iv) physical exam of the right shoulder revealed 90 degrees abduction and no crepitus, and no acute abnormality of the right shoulder (Tr. 31). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d, 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ's treatment of the medical evidence in this case meets these standards. The ALJ rejected the opinions of the state reviewing physicians who found the claimant did not have a severe impairment, and instead accounted for her severe impairments when formulating her RFC. Indeed, the undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating and reviewing physicians, *adopted* any limitations suggested in the medical record (*i. e.*, related to working above shoulder level and only frequent use of hands for fingering and handling), *and still concluded* that she could perform light work.

When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**